## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LUIS RAMON RAMIREZ,

      Petitioner,

v.                                                                           No. 1:21-cv-979 KWR/KRS

CENTRAL NEW MEXICO CORRECTIONAL
FACILITY *Warden*, and
ATTORNEY GENERAL OF THE
STATE OF NEW MEXICO,

      Respondents.[1]

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Luis Ramon Ramirez's ("Petitioner") Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed October 7, 2021. (Doc. 1).[2] The Attorney General of the State of New Mexico ("Respondent") filed an answer, as ordered by the Court. (*See* Docs. 20, 22). Petitioner filed replies. (*See* Docs. 19, 21). District Judge Kea W. Riggs referred this case to me to conduct hearings, if warranted, and to perform any legal analysis required to recommend to the Court an ultimate disposition. (Doc. 8). Having considered the parties' submissions, the relevant law, and the record in this case, I recommend

---

[1] Petitioner named "United States Tenth Circuit" as the respondent in his petition. (*See* Doc. 1 at 1). Petitioner, however, is in custody under a state-court judgment. At the time of filing his petition, he was incarcerated at Central New Mexico Correctional Facility ("CNMCF") in Los Lunas, New Mexico. He is presently incarcerated at Northeast New Mexico Correctional Facility ("NENMDF") in Clayton, New Mexico. *See* https://www.cd.nm.gov/offender-search/ (last accessed Sept. 12, 2023). This Court previously substituted the Attorney General of the State of New Mexico in place of "United States Tenth Circuit" as party respondents. The Clerk of Court noted the substitution of the Attorney General of the State of New Mexico on the record. On October 26, 2023, the Clerk of Court noted the substitution of the warden of NENMDF on the record. *See* Habeas Corpus Rule 2(a) ("If the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody.").

[2] On April 4, 2023, the Court adopted the March 9, 2023, Proposed Findings and Recommended Disposition, (Doc. 17), finding Petitioner filed a mixed petition containing both exhausted and unexhausted claims. (Doc. 20). Subsequently, on March 31, 2023, Petitioner voluntarily withdrew his unexhausted claims. (*See* Docs. 19, 20). Accordingly, only the following claims are at issue: (1) ineffective assistance of counsel based on trial counsel's alleged conduct of discouraging Petitioner and his brother, Alejandro Ramirez, from testifying during Petitioner's trial (Sub-Claim 1(b)); (2) sufficiency of the evidence to support Petitioner's convictions (Claim 2), and (3) improper jury instructions (Claim 3).

denying Petitioner's remaining claims for relief with prejudice.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On July 8, 2015, a jury found Petitioner guilty of first degree murder (willful and deliberate), conspiracy to commit first degree murder (willful and deliberate), shooting at or from a motor vehicle resulting in injury, three counts of child abuse, and aggravated assault with a deadly weapon.[3] (Doc. 22-1 at 64–77). The jury found Petitioner not guilty of tampering with evidence. (*Id.* at 73, 85). "With the exception of conspiracy, [Petitioner's] convictions were based on evidence that he acted as an accessory to substantially similar crimes committed by his brother, Alejandro Ramirez" ("Alejandro").[4] *State v. Ramirez*, No. S-1-SC-35566, 2018 WL 286072, at *1 (N.M. Jan. 4, 2018).

Petitioner's convictions stemmed from the fatal shooting of Johnny Vialpando ("Mr. Vialpando") while Mr. Vialpando was sitting in a vehicle parked at a shopping mall in Farmington, New Mexico, on April 27, 2013. (Doc. 22-1 at 4–5, 19). Also present in the vehicle were Mr. Vialpando's wife and three minor children. (*Id.* at 4–5, 151–152). At trial, prosecutors alleged that Petitioner used his vehicle, a Blazer SUV, to block the vehicle occupied by Mr. Vialpando and his family while Alejandro approached Mr. Vialpando's vehicle with a gun supplied by Petitioner and shot Mr. Vialpando multiple times. *See Ramirez*, 2018 WL 286072, at *1–2 (describing shooting). Petitioner then drove Alejandro away from the scene. *Id.*

On September 17, 2015, Petitioner was sentenced to a term of life imprisonment plus sixty-eight years and six months (68 ½ years). (*See* Doc. 22-1 at 86–92, 127–33). On direct appeal, Petitioner was resentenced to a term of life imprisonment plus fifty-one years and six months (51 ½ years). (Doc. 22-1 at 286–92).

### A.  STATE DISTRICT COURT

---

[3] Except as otherwise noted, all record citations are to the exhibits attached to Respondent's Answer (Doc. 22). The Court cites to the CM/ECF pagination rather than any internal page numbers in the exhibits.

[4] Alejandro was separately tried and convicted of first degree murder and other charges by a jury approximately three months prior to Petitioner's trial. (*See* Doc. 22-1 at 8, 19, 109; *see also Ramirez v. Santistevan*, 2:21-cv-00081-RB-JMR (D.N.M. Oct. 3, 2022) Doc. 9-1 at 80–82).

On January 21, 2014, in advance of trial, Petitioner's trial counsel informed the trial court that the parties stipulated to Alejandro's trial being conducted first to allow him to testify as an alibi witness at Petitioner's trial. (*See* Doc. 23, Exh. A, January 21, 2014, Jury Tr. CD at 8:16:39–8:20:19). Alejandro was not represented by Petitioner's trial counsel. (*Id.* at 8:18:04-8:18:15). Nor was Alejandro's counsel present during the hearing. (*Id.*)

On June 19, 2015, the State filed a Motion to Compel Testimony and to Transport Alejandro. (Doc. 22-1 at 14–15). The State offered use immunity and a promise not to prosecute for perjury. (*Id.*). On June 30, 2015, the trial court conducted a motion hearing. (*See* Doc. 23, Exh. A, June 30, 2015, Jury Tr. CD at 2:45:14–2:57:51). Alejandro's counsel appeared telephonically. (*Id.* at 2:45:14–2:50:59). Petitioner did not oppose the motion. (*Id.* at 2:46:41–2:46:56). The trial court granted use immunity. (*Id.* at 2:50:59–2:51:03). Prior to concluding the hearing, the trial court advised the parties to be prepared in the event Alejandro refused to testify. (*Id.* at 2:55:59–2:56:15). Petitioner's trial counsel stated he would object to the submission of Alejandro's testimony on the grounds that Petitioner did not have an opportunity to cross-examine him. (*Id.* at 2:56:15–2:56:27).

On July 1, 2015, the trial court conducted a hearing to advise Alejandro of the State's subpoena to testify, inquiry as to whether Alejandro would testify, and advised him of the potential ramifications if he refused to testify. (Doc. 23, Exh. A, July 1, 2015, 4:16:00–4:28:49). Alejandro appeared in person and his counsel appeared telephonically. (*Id.* at 4:16:00–4:16:21). Alejandro and his counsel discussed the subpoena off the record and, subsequently, on the record requested additional time to consider the subpoena. (*Id.* at 4:16:21–4:28:49).

On July 7, 2015, prior to commencement of the second day of trial, the trial court held another hearing to address the State's subpoena for Alejandro. (Doc. 23, Exh. A, July 1, 2015, 4:16:00–4:28:49). Alejandro appeared in person; his counsel appeared telephonically. (*Id.* at 8:16:56–8:17:30). The trial court again advised Alejandro of the State's offer of use immunity and promise not to prosecute for perjury, and he would be held in contempt for failure to testify. (*Id.* at 8:17:30–8:19:09). Alejandro acknowledged the trial court's admonition and refused to testify.

3

(*Id.* at 8:18:10–8:18:43). The trial court held Alejandro in contempt. (*Id.* at 8:18:43–8:19:15).

At trial, Petitioner's trial counsel moved for a directed verdict arguing that insufficient evidence was presented to prove beyond a reasonable doubt the essential elements of the charged offenses. (Doc. 23, Exh. A, July 7, 2015, Jury Tr. CD at 11:09:29–11:12:48). The trial court denied the motion. (*Id.* at 11:09:29–11:12:52).

Petitioner also requested the trial court instruct the jury with Uniform Jury Instruction ("UJI") 14-2823, which states, in pertinent part, that "[m]ere presence of the defendant . . . is insufficient to establish that the defendant aided and abetted a crime." (Doc. 22-1 at 31; Doc. 23, Exh. A, July 7, 2015, Jury Tr. CD at 3:15:56–3:16:38). The trial court refused UJI 14-283 based on the instruction's use note, which states, "[n]o instruction on this subject shall be given." (Doc. 22-1 at 31; Doc. 23, Exh. A, July 7, 2015, Jury Tr. CD at 3:15:56–3:16:38).

The jury found Petitioner guilty on seven of the eight counts. (Doc. 22-1 at 64–77).

### B.  DIRECT APPEAL

Petitioner timely filed a direct appeal to the New Mexico Supreme Court. (Doc. 22-1 at 93–102). In his direct appeal, Petitioner raised four arguments:

1.  Sufficiency of the Evidence: Petitioner argued there was insufficient evidence to support his convictions because (a) there was no evidence that he shared Alejandro's deliberate intent to commit first degree murder; (b) there was no evidence of an agreement, verbal or otherwise, between Petitioner and Alejandro to commit murder; and (c) there was no evidence Petitioner knew that Mr. Vialpando's wife or children were in the vehicle. (*See id.* at 160–75).

2.  Double Jeopardy: Petitioner argued his convictions for (a) first degree murder and shooting at a motor vehicle, (b) multiple counts of child abuse, and (c) first degree murder and conspiracy to commit first degree murder violated his right to be free from double jeopardy. (*See id.* at 175–86).

3.  Improper Jury Instructions: Petitioner argued that the state trial court erroneously refused his request to instruct the jury with NM UJI 14-2823, which states in relevant

4

part that "[m]ere presence . . . and even mental approbation, if unaccompanied by outward manifestation or expression of such approval, is insufficient to establish that the defendant aided and abetted a crime." In addition, Petitioner argued that the trial court erroneously omitted the intent element from the conspiracy jury instruction. (*Id.* at 186–92).

4. Sentencing Errors: Petitioner argued that the trial court (a) erroneously designated his aggravated assault and child abuse convictions as serious violent offenses; and (b) erred in sentencing Petitioner to second degree shooting at a motor vehicle when the jury was only instructed as to third degree shooting at a motor vehicle. (*Id.* at 192–96).

On January 4, 2018, the New Mexico Supreme Court issued a decision vacating Petitioner's conviction for shooting at a motor vehicle on double jeopardy grounds, and affirming Petitioner's remaining convictions. (*Id.* at 282; *see also Ramirez*, 2018 WL 286072, at *1). The court then remanded Petitioner's case for "re-sentencing on the aggravated assault and child abuse convictions so that the district court [could] make the findings necessary to conclude that the crimes [were] serious violent offenses . . . ." (Doc. 22-1 at 282; *see also Ramirez*, 2018 WL 286072, at *1).

On June 27, 2018, the district court entered a new judgment vacating Petitioner's conviction for shooting at a motor vehicle and making the requisite serious violent offense findings. (Doc. 22-1 at 286–92). Petitioner was resentenced to a term of life imprisonment plus fifty-one years and six months (51 ½ years). (*Id.*).

**C. STATE HABEAS PETITION**

Petitioner thereafter filed a *pro se* petition for habeas corpus relief in state court pursuant to Rule 5-802 NMRA. (*Id.* at 295–309). He raised the following arguments in his state habeas petition:

1. Ineffective Assistance of Counsel: Petitioner asserted that his trial counsel was ineffective for: a) failing to call Alejandro to testify and convincing Petitioner to not take the stand in his own defense; b) failing to investigate witnesses relevant to

5

Petitioner's defense, including the individual who found the firearm allegedly used in the crime; c) inadequately cross-examining witnesses; and d) failing to move for dismissal on the ground that Petitioner was actually innocent. (*Id.* at 297–304).

2. <u>Sufficiency of the Evidence</u>: Petitioner argued there was insufficient evidence to support his convictions. (*Id.* at 303–04).

3. <u>Double Jeopardy</u>: Petitioner argued several of his convictions violated his right to be free from double jeopardy. (*Id.* at 305 ("[Petitioner] was convicted of 1st degree murder, accessary [sic] to commit murder, and shooting at or from a motor vehicle violating due process of double jeopardy. [Petitioner] was also found guilty of multipal [sic] counts of child abuse[.]")).

4. <u>Improper Jury Instructions</u>: Petitioner argued that the district court erroneously denied his request to instruct the jury with NM UJI 14-2823. (*Id.* at 303).

The state court appointed counsel to represent Petitioner in his habeas proceeding. (*Id.* at 315–17). As ordered by the state court, Petitioner's counsel filed an amended state habeas petition which fleshed out the ineffective assistance of counsel arguments raised in Petitioner's *pro se* petition. (*Id.* at 318–33).

On May 12, 2021, the state court summarily dismissed Petitioner's amended state habeas petition on its merits. (*Id.* at 435–38). Petitioner then filed a petition for writ of certiorari to the New Mexico Supreme Court. (*Id.* at 446). He reiterated his ineffective assistance of counsel claims, *id.* at 446–56, but did not raise his claims for sufficiency of the evidence, double jeopardy, and improper jury instructions. On July 16, 2021, the New Mexico Supreme Court denied the petition. (*Id.* at 577).

## II.   PETITIONER'S § 2254 HABEAS PETITION

On October 7, 2021, Petitioner filed the § 2254 federal habeas petition that is presently before the Court and the subject of this PFRD. (Docs. 1, 21). In his *pro se* petition, Petitioner asserted three grounds for relief:

1. <u>Claim 1: Ineffective Assistance of Counsel</u>

a) Petitioner contended that his trial counsel was ineffective because "there was evidence that should have been suppressed but [his] counsel did not do it." (*See* Doc. 1 at 5).

b) Petitioner contended that his trial counsel was ineffective because counsel "strongly suggested" that neither Petitioner nor Alejandro take the stand during the trial. (*Id.* at 5; Doc. 21 at 2).

2. Claim 2: Sufficiency of the Evidence

Petitioner argued there was insufficient evidence to support any of his convictions. (*See* Doc. 1 at 7; Doc. 21 at 2).

3. Claim 3: Improper Jury Instructions

Petitioner contended that the jurors were improperly instructed to find him guilty "just by being there."

(*See* Doc. 1 at 8; Doc. 21 at 2).

On July 7, 2022, the Court ordered Respondent to file an answer addressing the merits of each claim and whether Petitioner exhausted his state court remedies as to each claim. (Doc. 7). On September 26, 2022, Respondent filed a limited answer in which Respondent contended Petitioner filed a mixed petition containing both exhausted and unexhausted claims. (*See* Doc. 14 at 1, 9).

On March 9, 2023, this Court recommended the Petitioner be given an opportunity to voluntarily dismiss his unexhausted claim—sub-claim 1(a) for ineffective assistance of counsel based on trial counsel's alleged failure to seek suppression of evidence—and proceed on his remaining claims, all of which were exhausted. (Doc. 17 at 12). On March 31, 2023, Petitioner voluntarily dismissed his unexhausted claim—sub-claim 1(a). (Doc. 19 at 1; Doc. 20 at 2).

Subsequently, on April 4, 2023, the Court formally dismissed Petitioner's sub-claim 1(a) without prejudice and ordered Respondent to file a supplemental answer addressing the merits of Petitioner's exhausted claims: ineffective assistance of counsel based on trial counsel's alleged conduct of discouraging Petitioner and Alejandro from testifying during Petitioner's trial (Sub-

Claim 1(b)); sufficiency of the evidence to support Petitioner's convictions (Claim 2); and improper jury instructions (Claim 3). (Doc. 17 at 9; *see also* Doc. 20).

Thereafter, on April 14, 2023, Petitioner filed a "Reply to Respondent's [*sic*]" wherein he reiterated his contentions as to his exhausted claims. (*See generally* Doc. 21). Petitioner did not proffer new evidence. (*See id.*) On April 21, 2023, Respondents filed a supplemental answer. (Doc. 22).

## III.   STANDARD OF REVIEW

The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 ("AEDPA"), govern this case. A petition for habeas corpus under § 2254 attacks the constitutionality of a state prisoner's conviction and continued detention. A federal court cannot grant habeas relief pursuant to § 2254(d) with respect to any claim adjudicated on the merits by a state court unless the petitioner's state-court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1), there is a two-step inquiry. The threshold question is whether the applicant seeks to invoke a rule of law that was clearly established by the Supreme Court at the time the conviction became final. *Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011); *see also Williams v. Taylor*, 529 U.S. 362, 390 (2000). If the law was clearly established, then the court determines whether the state court decision was "contrary to or involved the unreasonable application of that clearly established federal law." *Byrd*, 645 F.3d at 1165 (quoting *Turrentine v. Mullin*, 390 F.3d 1181, 1189 (10th Cir. 2004)) (internal quotation marks omitted).

The term "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. A state court decision is "contrary to" Supreme Court

precedent if it "applies a rule that contradicts the governing law set forth in [those] cases." *Id*. at 405. The Supreme Court has interpreted the term "contrary to" as meaning, *inter alia*, "diametrically different" and "opposite in character and nature." *Id.* Therefore, habeas relief under § 2254(d)(1) may be granted only where the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Price v. Vincent*, 538 U.S. 634, 640 (2003). The state court need not cite applicable Supreme Court cases or even to be aware of such cases, "so long as neither the reasoning nor the result of the state-court decision contradicts [that precedent]." *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state court decision unreasonably applies Supreme Court precedent if it "identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. However, "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court . . . [applied] clearly established federal law erroneously or incorrectly." *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003) (internal quotation marks and citations omitted). "Rather, that application must be objectively unreasonable." *Id*. at 76.

Under AEDPA, state court findings of fact are "presumed to be correct." 28 U.S.C. § 2254(e)(1). Accordingly, petitioners challenging a state court's decision based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2) must show by clear and convincing evidence that the determination was factually erroneous. *See Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).

Lastly, where state courts have adjudicated a claim on its merits, federal courts are limited to reviewing the record as it stood before the state courts. *Cullen v. Pinholster*, 563 U.S. 179, 180–81 (2011) (citing § 2254(d)(1)). In other words, federal courts may not hold evidentiary hearings on claims that the state court decided on their merits. *Id.* at 181; *Littlejohn v. Trammell*, 704 F.3d 817, 857 (10th Cir. 2013). "'Adjudicated on the merits' [means] a decision finally resolving the

9

parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Wilson v. Workman*, 577 F.3d 1284, 1308 (10th Cir. 2009) (internal quotation marks omitted), *overruled on other grounds as recognized in Lott v. Trammell*, 705 F.3d 1167 (10th Cir. 2013). Thus, summary decisions, even those completely devoid of any reasoning at all, can constitute decisions "on the merits" for purposes of AEDPA. *Harrington v. Richter*, 562 U.S. 86, 98 (2011). When the state's highest court offers no explanation for its decision, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

"Even if a state court resolves a claim in a summary fashion with little or no reasoning, [federal courts] owe deference to the state court's result." *Paine v. Massie*, 339 F.3d 1194, 1198 (10th Cir. 2003). The Supreme Court has held that the standard is "highly deferential" to state courts and "difficult to meet," as it "demands that state-court decisions be given the benefit of the doubt." *Pinholster*, 563 U.S. at 181 (quoting *Richter*, 562 U.S. at 101; *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)); *see also Black v. Workman*, 682 F.3d 880, 891 (10th Cir. 2012) ("Under [AEDPA,] a federal court in a § 2254 proceeding must be exquisitely deferential to the state court's resolution of the [petitioner's] claims.").

Because Petitioner proceeds *pro se*, I must liberally construe his pleadings, but I cannot assume the role of advocate on his behalf. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## IV.   ANALYSIS

### A.   Petitioner's Claim for Ineffective Assistance of Counsel is Conclusory and Insufficient to Warrant Habeas Relief

In his first ground for relief, Petitioner asserts that his counsel provided him ineffective assistance. (Doc. 1 at 5; *see also* Doc. 21 at 2). Petitioner raised this claim over the course of his state post-conviction filings. (*See generally* Doc. 22-1 at 295–309, 319–33). In his § 2254 petition, Petitioner contends his counsel provided him ineffective assistance because counsel "strongly

suggested" that neither Petitioner nor Alejandro testify at trial. (Doc. 1 at 5; Doc. 21 at 2 (claiming counsel "highly recommended" Petitioner and Alejandro to "not take the stand to give our testimony in our innocence"). Petitioner further alleges counsel advised him to not take the stand because "all [Petitioner] would do is incriminate [himself]." (Doc. 1 at 5; *see also* Doc. 21 at 2 (counsel purportedly stated, "it would be in [Petitioner's] best interest to not say a word."). He also claims that "nothing that [he or Alejandro] would have said would have harmed [his] case instead it would have helped [him]." (Doc. 1 at 5). Moreover, Petitioner asserts that if he or Alejandro had testified, "it would have made it clear that [Petitioner] had no communication or knowledge with what was going on." (*Id.*; *see also* Doc. 21 at 2).

It is well established that defendants have a Sixth Amendment right to effective counsel. *See Strickland v. Washington*, 466 U.S. 668, 685–86 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. Accordingly, the Supreme Court in *Strickland* devised a two-step inquiry to determine whether a lawyer's poor performance deprived an accused of his Sixth Amendment right to assistance of counsel. *Id.* at 686–87. In order to establish an ineffective assistance claim, a movant must demonstrate that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Id.* at 687–88.

Under the first prong, "the performance inquiry must be whether counsel's assistance was reasonable considering all circumstances." *Id.* at 688. However, review of an attorney's performance "must be highly deferential," and the court must "evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Indeed, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (citation omitted). The question to determine deficient performance "is whether [the] representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Simpson v. Carpenter*, 912 F.3d 542, 593 (10th Cir. 2018) (citing *Harrington*, 562 U.S. at 105).

The inquiry does not stop there; rather, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. Under the second prong of the inquiry, the movant must establish prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* Courts may analyze either prong first and need only address one prong if the movant fails to make a sufficient showing on that prong. *Id.* at 697.

When an ineffective assistance of counsel claim comes to the Court by way of a § 2254 petition, the petitioner faces an even more difficult burden to show that the state court's decision to deny his ineffective assistance of counsel claim was contrary to or an unreasonable application of clearly established federal law. *See Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 742 (10th Cir. 2016) (holding that a review of ineffective assistance of counsel claims in the context of a § 2254 petition are "doubly deferential in that [the court] take[s] a highly deferential look at counsel's performance [under Strickland] through the deferential lens of § 2254(d)"); *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) ("[W]hen assessing a state prisoner's ineffective-assistance-of-counsel claims on habeas review, [the court] defer[s] to the state court's determination that counsel's performance was not deficient, and further, defer[s] to the attorney's decision in how best to represent a client." (internal citation omitted)).

As a preliminary matter, Petitioner's first claim is too vague and conclusory to warrant habeas relief. The Tenth Circuit has "repeatedly held that conclusory allegations are insufficient to warrant habeas relief for ineffective assistance of counsel." *Quintana v. Mulheron*, 788 F. App'x 604, 609 (10th Cir. 2019) (unpublished); *Johnson v. Raemisch*, No. 19-1044, 779 F. App'x 507, 515–16 (10th Cir. 2019) (unpublished) ("Vague, speculative, and conclusory allegations will not satisfy an applicant's burden under *Strickland's* prejudice prong.") (citing *Stafford v. Saffle*, 34 F.3d 1557, 1564 (10th Cir. 1994)); *Kidwell v. Martin*, 480 F. App'x 929, 934 (10th Cir. 2012) (unpublished) ("We have repeatedly stated that such conclusory allegations do not satisfy

*Strickland's* prejudice element.").

Next, although the New Mexico Supreme Court summarily denied Petitioner's state petition, I am not persuaded that the evidence leads very clearly to the conclusion that a federal claim was overlooked by the state court. In his petition before the New Mexico Supreme Court, Petitioner raised the issue that his attorney advised him not to testify and failed to call Alejandro as a witness. For example, he explained that his counsel advised him it would be in Petitioner's "best interest for [Alejandro] not to take the stand." (Doc. 22-1 at 297). However, Petitioner felt Alejandro's testimony "would have had a major part in [Petitioner's] trial." (*Id.*). As for Petitioner's testimony, he would have testified that he did not have a gun, he did not give Alejandro a gun, and his "only participation in the event was to give [Alejandro] a ride" to and from the mall. (*Id.* at 299). In turn, Alejandro's testimony would corroborate Petitioner's testimony. (*Id.* at 300).

In his amended state petition, Petitioner asserted his counsel failed to investigate, interview, or "at a minimum establish parameters with Alejandro's attorney[,] Mr. Clark." (*Id.* at 329). Specifically, he claimed his counsel should have "determine[d] the best way to get Alejandro to testify at trial" since Alejandro was granted immunity for his testimony. (*Id.* at 330). Petitioner provided additional details and explained that his attorney "strongly argu[ed] against Petitioner testifying at trial" even though Petitioner's "testimony was essential to clarify intent and knowledge." (*Id.* at 327–28).

Because the summary denial by the state court is an adjudication on the merits, this Court is deferential to the state's court's decisions and will not review Petitioner's claim *de novo*. Instead, the Court looks at whether Petitioner establishes that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Petitioner does not make the requisite showing.

Petitioner does not direct the Court to any United States Supreme Court authority that shows the decisions in the state court are contrary to or involved an unreasonable application of

clearly established Federal law. Petitioner further cannot establish that the state court's decision was unreasonable in light of the evidence present in the state court record. At trial, Alejandro refused to testify *after* being counseled by *his own attorney* and advised by the trial court of the State's offer of use immunity and promise to forego perjury prosecution as well as the consequences for refusing to testify. (*See* Doc. 23, Exh. A, July 7, 2015, Jury Tr. CD at 8:17:16–8:19:08). Alejandro acknowledged the trial court's admonition, he refused to testify, and the trial court held him in contempt. (*Id.* at 8:18:10–8:19:15). The record is also void of any evidence that *Petitioner's attorney* counseled Alejandro. (*See id.* at January 21, 2014, Jury Tr. CD at 8:16:39–8:20:19, June 30, 2015, Jury Tr. CD at 2:45:14–2:57:51, July 1, 2015, Jury Tr. CD at 4:16:00–4:28:49, July 7, 2015, Jury Tr. CD at 8:17:16–8:19:08; *see generally* Doc. 22-1; *see also* Doc. 1 at 5; Doc. 21 at 2).

As for Petitioner's testimony, he testified at trial that his counsel advised him of his right to testify and the consequences for not testifying, Petitioner understood his rights, and he affirmatively decided not to testify. (*See* Doc. 23, Exh. A, July 7, 2015, Jury Tr. CD at 11:26:19–11:26:49). "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Because Petitioner fails to carry his burden of establishing that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, or that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, he has not established a violation of his constitutional rights. I therefore recommend that the Court deny his petition for habeas corpus as to his first claim: ineffective assistance of counsel.

B.   <u>Petitioner Fails to Show the State Court Erred in Denying His Insufficient Evidence Claim</u>

Petitioner urges the Court to vacate his convictions because the record contained

insufficient evidence to convict him on the seven counts for which he was found guilty. (Doc. 1 at 7; Doc. 21 at 2). He contends:

> During trial I had told my lawyer that there was no way that the 'evidence' they had could prove anything because I never handed my brother anything. There was no communication inbetween [*sic*] us and I stoped [*sic*] to pick up my brother I randomly stoped [*sic*] in the lane. I did 'not' have any intentions of blocking anyone, because when a person is being picked up you dont [*sic*] stop 50 to 100 yards away from them, you stop right where they are at. Also the gun was moved from the place where it was found and tampered with befor [*sic*] being turned in, it was clearly stated in trial and there was no photo lineup—theres [*sic*] nothing.

(Doc. 1 at 7). Petitioner's federal habeas reply brief mirrored his § 2254 petition, except that he alleged that there was insufficient evidence to demonstrate he was communicating with Alejandro because he was not in possession of a phone during the crime. (Doc. 21 at 2).

Insufficient evidence claims are governed by the clearly established federal law set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Jackson* requires courts to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. When inconsistent evidence was presented at trial, it is assumed that the inconsistencies were resolved in favor of the prosecution. *Id.* at 326. There is a particularly high bar to obtaining habeas relief when challenging the sufficiency of the evidence because it is "subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012). The first layer of judicial deference is that given to the jury on direct appeal. *Id.* On direct appeal, a court assesses whether a jury's conclusions were within the bounds of reason; it does not reassess the weight of the evidence. *United States v. Yoakam*, 116 F.3d 1346, 1349 (10th Cir. 1997) (internal citations omitted). The second layer of judicial deference is that given to the state court on habeas review. *Coleman*, 566 U.S. at 651. On habeas review, a federal court only decides whether any fair-minded jurist could have come to the same conclusion as the state court. *Harrington*, 562 U.S. at 102. A state court is not required to cite or even demonstrate awareness of federal law when making its decision. *Early*, 537 U.S. at 8.

Under any standard of review, Petitioner's arguments do not justify relief. First, at no point

does Petitioner explain why the circumstantial evidence is insufficient to support a conviction. (*See* Doc. 1 at 7; *see also* Doc. 21 at 2). Petitioner simply asserts that the lack of direct evidence showing he (1) communicated with Alejandro, (2) handed Alejandro a gun, (3) intended to block Mr. Vialpando's vehicle, and (4) intended to kill Mr. Vialpando means insufficient evidence existed to convict him. He also intimates that there was insufficient evidence to identify him as the driver only because a photo lineup was not shown to the eyewitnesses. Yet, substantial circumstantial evidence is sufficient to support a conviction. *See State v. Montoya*, 345 P.3d 1056 (N.M. 2015).

Second, Petitioner fails to show that the state court's denial of his insufficient evidence claim was contrary to or an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). Nor does he show the denial was based on an unreasonable determination of facts. *See* 28 U.S.C. § 2254(d)(2).

At trial, Petitioner moved for a directed verdict claiming that as a matter of law there was insufficient evidence to convict him on any of his eight charges. (Doc. 23, Exh. A, July 7, 2015, Jury Tr. CD at 11:09:29–11:12:48). The trial court denied the motion. (*Id.* at 11:09:29–11:12:52). On direct appeal, Petitioner challenged the sufficiency of the evidence to convict him on seven of the charges. (Doc. 22-1 at 160–75). The New Mexico Supreme Court opined that substantial circumstantial evidence existed to support a conviction beyond a reasonable doubt. (Doc. 22-1 at 253–71). Petitioner reiterated his insufficient evidence arguments in his state habeas petition. (Doc. 22-1 at 295–304). The New Mexico Supreme Court summarily dismissed the state habeas petition. (Doc. 22-1 at 435–38). Finally, Petitioner appealed the state court's denial in a petition for a writ of certiorari. (Doc. 22-1 at 446–56). The New Mexico Supreme Court denied his petition for a writ of certiorari. (Doc. 22-1 at 577).

In deciding the insufficient evidence claim, the New Mexico Supreme Court applied state law. (*See, e.g.*, Doc. 22-1 at 260 (citing *State v. Sutphin*, 753 P.2d 1314, 1319 (N.M. 1988); *State v. Flores*, 226 P.3d 641, 646 (N.M. 2010), *overruled on other grounds by State v. Martinez,* 478 P.3d 880 (N.M. 2020); *State v. Duran*, 140 P.3d 515, 518 (N.M. 2006)). The cited New Mexico

law regarding review of the sufficiency of evidence closely mirrors federal law. *Compare Sutphin*, 753 P.2d at 1319 ("[T]he test to determine the sufficiency of evidence in New Mexico, which is the same as enunciated in *Jackson*, is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction.") (internal citation omitted), *compare also Flores*, 226 P.3d at 646 ("[W]e must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict.") (internal quotation marks and citation omitted), *and Duran*, 140 P.3d at 518 ("In our determination of the sufficiency of the evidence, we are required to ensure that "a rational jury could have found beyond a reasonable doubt the essential facts required for a conviction.") (internal quotation marks and citation omitted), *with Jackson*, 443 U.S. at 319 ("The relevant question is whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."). The New Mexico Supreme Court's application of the state law regarding Petitioner's insufficient evidence claim was not contrary to federal law.

Likewise, the New Mexico Supreme Court did not unreasonably apply federal law when it determined there was sufficient evidence to prove the essential elements of each of Petitioner's convictions. On direct appeal and in the § 2254 petition, Petitioner challenged the proof of the intent element of first degree murder (willful and deliberate), child abuse (three counts), and aggravated assault with a deadly weapon. (*See* Doc. 22-1 at 160–75; *see also* Doc. 1 at 7; Doc. 21 at 2). He further contended that the evidence in support of conspiracy to commit first degree murder was purely speculation and the State lacked any direct or circumstantial evidence. (*See* Doc. 22-1 at 160–75; *see also* Doc. 1 at 7; Doc. 21 at 2). The New Mexico Supreme Court was not persuaded. (Doc. 22-1 at 253–71). The court conducted a charge-by-charge analysis.

With respect to the first degree murder conviction, the New Mexico Supreme Court found "a reasonable juror could find" the evidence submitted by the State "sufficient to support . . . [a] finding [of] deliberate intent." (Doc. 22-1 at 264). The New Mexico Supreme Court explained the

State introduced evidence that, pursuant to precedent, was sufficient for the conviction of the first degree murder as an accessory. (*Id.*). Specifically, Petitioner was the driver of the Blazer, Petitioner waited in the Blazer in close proximity during the crime, and Petitioner drove Alejandro away from the scene. (*See* Doc. 22-1 at 263 (citing *State v. Lucero*, 313 P.2d 1052 (N.M. 1957); *comparing State v. Carrasco*, 946 P.2d 1075 (N.M. 1997). The court also pointed to multiple eyewitness testimony at trial that Petitioner (1) blocked Mr. Vialpando and his family in their parking spot, (2) placed the Blazer in a position that prohibited Mr. Vialpando's car from moving, (3) spoke to Alejandro "for up to one minute" prior to the shooting, (4) "waited for Alejandro to walk back to [Mr. Vialpando's] window, shoot [Mr. Vialpando], and return to the Blazer before driving Alejandro away from the crime scene." (Doc. 22-1 at 263–64). Viewed in the light most favorable to the State, this evidence permits a rational trier of fact to find beyond a reasonable doubt that Petitioner had the requisite intent to sustain a conviction of first degree murder as an accessory.

On the conspiracy to commit first degree murder conviction, the court found the jury was provided with "ample evidence to support an inference that" Petitioner and Alejandro agreed to murder Mr. Vialpando. (Doc. 22-1 at 265–66). Eyewitness testimony established that Alejandro "frequently checked and texted on his phone" during his five-to-eight-minute conversation with Mr. Vialpando while he leaned on Mr. Vialpando's front passenger window. (Doc. 22-1 at 265). Shortly thereafter, Petitioner stopped the Blazer directly behind Mr. Vialpando's vehicle thereby blocking Mr. Vialpando in the parking space. (*Id.*) Based on these facts alone, the New Mexico Supreme Court concluded the jury could have inferred Alejandro and Petitioner were communicating while Alejandro stalled Mr. Vialpando until Petitioner arrived. (*Id.*) The court, nevertheless, discussed additional eyewitness testimony at trial that supported Petitioner's conviction. In particular, Alejandro approached Petitioner's Blazer immediately after Petitioner arrived at the scene, the brothers talked for about a minute, Petitioner then "handed Alejandro an object in a manner that C.M. described as 'really careful,' 'gently,' 'slow,' and 'aware.'" (*Id.*) Alejandro then shot Mr. Vialpando, got into Petitioner's Blazer, and Petitioner sped away. (*Id.*)

The New Mexico Supreme Court's determination as to the conspiracy to commit first degree murder conviction was objectively reasonable considering the inculpatory nature of the facts.

On the three child abuse convictions, the New Mexico Supreme Court concluded sufficient evidence existed to infer Petitioner knew children were in the vehicle and recklessly disregarded the children's health and safety. (Doc. 22-1 at 266–69). At trial, the State presented evidence that Petitioner's Blazer was in close proximity to the back window of Mr. Vialpando's vehicle. (*Id.* at 268). Mr. Vialpando's children testified they saw Petitioner behind his steering wheel when he spoke to Alejandro. (*Id.*) Two of the children, C.M. and M.M., testified they watched Petitioner's and Alejandro's entire exchange. (*Id.* at 268–69). M.M., who was seated in the third row of the vehicle, testified Petitioner and Alejandro "'weren't very far'" from him. (*Id.* at 269). The court found reversal was not warranted even though the defense presented contrary evidence that Petitioner could not see the children. (*Id.* (citing *State v. Astorga*, 343 P.3d 1245, 1262 (N.M. 2015) (finding jury is free to reject a defendant's version of the facts) (internal citation omitted))). It also determined that, in viewing the evidence in most favorable to the State, there was sufficient evidence to infer Petitioner "recklessly disregarded the children's health and safety" during the crime. (Doc. 22-1 at 269). The court's rulings were based on a reasonable factual determination.

Similarly, the court found a rational juror could infer Petitioner had the requisite intent and knowledge for aggravated assault on Rhiannon Vialpando ("Mrs. Vialpando"), Mr. Vialpando's wife. At trial, Mrs. Vialpando testified that she was sitting in the driver seat with the vehicle in reverse and her foot on the brake when Petitioner drove up to her vehicle. (Doc. 22-1 at 270). Alejandro also conversed with Mr. Vialpando through the open passenger window. (*Id.*) The New Mexico Supreme Court concluded a juror could infer that Petitioner knew the driver seat was occupied. (*Id.*) It thus determined there was sufficient evidence to prove aggravated assault conviction beyond a reasonable doubt at trial. This Court agrees.

Petitioner fails to identify any unreasonable or contrary application of federal law when the state court was deciding his sufficiency of the evidence claim that would entitle him to relief under § 2254(d)(1). Nor does he point to any error in the state court's determination of facts when it

denied his sufficiency of the evidence claim. As such, this Court has no basis for review under §

2254(d)(2). I thus recommend the Court deny with prejudice Petitioner's second claim: insufficient

evidence.

      C.    <u>Petitioner Fails to Show that the Trial Court Erred in Instructing the Jury</u>

In his final ground for relief, Petitioner contends "the jury instructions were rewriten [*sic*]

or changed to make [his] mere presence convictable." (Doc. 21 at 3; *see also* Doc. 1 at 8 (alleging

the jury was instructed "to find me guilty just by being there")). The § 2254 petition does not

specifically identify which jury instruction(s) are at issue. (*See* Docs. 1, 21). Over the course of his

state post-conviction filings, however, Petitioner asserted the trial court improperly instructed the

jury when it: (1) denied his request for UJI 14-2823 (mere presence in accessory liability), and (2)

omitted the intent element from the conspiracy instruction. (*See* Doc. 1 at 24, 37; *see also* Doc.

22-1 at 110, 186–92, 276–80, 298, 303–04).

It is not the province of the federal courts to re-examine state-court determinations of state-

law questions. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Accordingly, federal habeas relief

is not available for errors of state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Absent a specific

constitutional violation, federal habeas review of state court errors is limited to whether the error

"so infected the [proceeding] with unfairness as to make the resulting conviction a denial of due

process." *Id.* at 780 (quotation omitted). Pertinent here, the Tenth Circuit has recognized that "as

a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas

corpus proceedings, unless they are so fundamentally unfair as to deprive petitioner of a fair trial

and to due process of law." *Patton v. Mullin*, 425 F.3d 788, 807 (10th Cir. 2005) (internal quotation

marks omitted).

Here, at the state court level, Petitioner first objected to the trial court's refusal to instruct

UJI 14-2823. (Doc. 22-1 at 276–78). The uniform instruction provides, in relevant part, "[m]ere

presence of the defendant . . . is insufficient to establish that the defendant aided and abetted a

crime." The New Mexico Supreme Court, on appeal, found the trial court did not err because it

followed binding precedent and the instruction's use note, which stated, "No instruction on this

subject shall be given." (Doc. 22-1 at 277–78). Next, Petitioner objected to the instruction on conspiracy because it lacked the element of intent. (*Id.* at 277–80). The New Mexico Supreme Court reviewed this issue for fundamental error because Petitioner did not preserve this issue. (*Id.* at 278). The court concluded the omission of the "intent" element of UJI 14-2810 did not rise to the level of fundamental error based on the facts of the case. *(Id.* at 279–80).

The trial court's decision and the decision of the New Mexico Supreme Court on these two issues involved interpretation of New Mexico's Uniform Jury Instructions and other applicable New Mexico law. (*Id.* at 276–80). Construing Petitioner's *pro se* § 2254 petition liberally, (*Hall*, 935 F.2d at 1110), and based on the state record, Petitioner contends instructional errors resulted in fundamental error. (*See* Doc. 1 at 8, Doc. 21 at 3). Petitioner, nevertheless, has not articulated a distinct basis for a constitutional claim. (*See* Doc. 1 at 8, Doc. 21 at 3). I therefore conclude that Petitioner has failed to demonstrate or allege a cognizable constitutional claim based on the erroneous jury instructions for which federal habeas relief is available. *See Lewis*, 497 U.S. at 780; *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (acknowledging that a petitioner may not "transform a state-law issue into a federal one merely by asserting a [constitutional] violation").

Even if I found that Petitioner had raised a federal issue, he has not shown that any error in the jury instructions amounts to a violation of federal due process. A federal court may grant habeas relief based on an erroneous state jury instruction only when the petitioner meets a "heavy burden," *Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995), of showing that the "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated [due process]." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (quoting *Cupp*, 414 U.S. at 146). When considering whether an instruction infected the entire trial, a court must consider it "in the context of the entire record, including testimony and the argument of counsel." *Hunt v. Okla.*, 683 F.2d 1305, 1310 (10th Cir. 1982). Finally, even where a petitioner shows that an erroneous jury instruction violated due process, he faces a second hurdle: he may obtain relief only if the

constitutional error was not harmless, *i.e.*, the unconstitutional jury instruction "had a substantial and injurious effect or influence in determining the jury's verdict."[5] *Valdez v. Bravo*, 244 F. App'x 864, 868 (10th Cir. 2007). The government bears the burden to show that the constitutional error was harmless. *United States v. Schneider*, 665 F. App'x 668, 673 (10th Cir. 2016).

Courts often decline to find that an erroneous jury instruction infected the entire trial when the instruction did not prevent the defendant from presenting his defense. *See Maes*, 46 F.3d at 984–85. Moreover, "[a]lthough the sufficiency of the evidence does not alone eliminate the possibility of a due[-]process violation, [if] the strength of the evidence supports the conclusion that the actual verdict entered in this case was not the result of an" erroneous jury instruction, then it becomes harder to show a due-process violation. *Valdez*, 244 F. App'x at 870; *see Turrentine v. Mullin*, 390 F.3d 1181, 1191 (10th Cir. 2004) (holding that an error in a jury instruction defining the requisite intent did not infect the whole trial because "ample evidence supported the conclusion that [the petitioner] intended to kill his victims"); *Griffin v. LeMaster*, No. 97-cv-1560 MV/RHS, 2004 WL 7337893, at *11 (D.N.M. Aug. 25, 2004) (finding that a jury instruction erroneously describing the requisite intent did not amount to a due-process violation when significant evidence showed that the petitioner had such intent). The Tenth Circuit has also considered whether, despite a prosecution's alleged switching of its theory of the case, the petitioner nonetheless had notice of the theory it ultimately advanced. *See Lott v. Trammell*, 705 F.3d 1167, 1189 (10th Cir. 2013).

Petitioner fails to show that a violation of federal due process occurred because (1) he fails to show that the trial court erred (a) in refusing to instruct the jury with UJI 14-2823, and (b) omitting the "intent" element of UJI 14-2810, and (2) even if Petitioner showed that the erroneous instructions violated due process, Petitioner fails to show that it infected the entire trial. Finally, even if the instruction violated due process, any error was harmless.

## V.   CERTIFICATE OF APPEALABILITY

Lastly, I address whether Petitioner is entitled to a certificate of appealability. No appeal may

---

[5] The harmless-error analysis often overlaps with the due-process inquiry. *Valdez*, 244 F. App'x at 868.

be taken from a "final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" unless the petitioner first obtains a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability may be issued only if Petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As set forth above, Petitioner has failed to make this showing. I therefore recommend that the Court deny Petitioner a certificate of appealability.

## VI.   RECOMMENDATION

For the reasons stated above, I recommend that the Court deny Petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Doc. 1), deny a certificate of appealability, and dismiss this case with prejudice as to the three exhausted claims.

**WITHIN FOURTEEN (14) DAYS AFTER A PARTY IS SERVED WITH A COPY OF THESE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION, THAT PARTY MAY, PURSUANT TO 28 U.S.C. § 636(B)(1), FILE WRITTEN OBJECTIONS TO SUCH PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. A PARTY MUST FILE ANY OBJECTIONS WITH THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO WITHIN THE FOURTEEN (14) DAY PERIOD ALLOWED IF THAT PARTY WANTS TO HAVE APPELLATE REVIEW OF THE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. IF NO OBJECTIONS ARE FILED, NO APPELLATE REVIEW WILL BE ALLOWED. PURSUANT TO FED. R. CIV. P. 72(B)(2), A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE OBJECTIONS.**

KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE